KEVIN ROCKOFF (SBN 260981)
LAW OFFICES OF KEVIN A. ROCKOFF
120 Tustin Ave, Suite C, #135
Newport Beach, CA 92663
Phone: 949-329-8259
Email: contact@valorlaw.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| STEVE ROSENE, an individual<br><br>Plaintiff,<br><br>v.<br><br>MCA DEBT ADVISORS LLC, a<br>Wyoming Limited Liability Company.<br><br><br>Defendant. | Civil Case No 8:24-cv-2188<br><br>COMPLAINT FOR VIOLATIONS OF:<br><br><br>1. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c) and 47 U.S.C. §227(b)]<br>2. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)] DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff Steve Rosene with his Original Complaint and will allege and show as follows:

ORIGINAL COMPLAINT          1

## NATURE OF THE CASE

1.      Plaintiffs bring this action individually seeking damages and any other available legal or equitable remedies resulting from the illegal actions of MCA DEBT ADVISORS, LLC. ("MCA" or "Defendant"), in negligently, knowingly and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C.* § 227, et seq. ("TCPA") and related regulations, thereby invading Plaintiff's privacy.

## PARTIES

2.      Plaintiff STEVE ROSENE ("Plaintiff" or "Rosene") is a natural person, a resident of this District and was present in California for all calls received in this case.

3.      Defendant MCA is a Limited Liability Company organized and existing under the laws of Wyoming and can be served via 2545 Railroad Street, Suite 100, Pittsburgh, Pennsylvania 15222

## JURISDICTION AND VENUE

4.      **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012).

5.      **Venue**. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at California residents, including the Plaintiff—occurred in

this District and because the Plaintiff was residing in the Southern District of California when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

6.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

7.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

8.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

9.      The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

10.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

11.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012)

12.     The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone

solicitations at those numbers.  See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

14.     The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls may be placed.  *Id.*

15.     The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

16.     These regulations are codified in part at 47 CFR 64.1200(d)(1)-(7). Specifically, these regulations require a company to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. 47 CFR 64.1200(d)(4) (emphasis added).

17.    These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they provide the required information. 47 CFR 64.1200(d).

18.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that they have provided the required information on each of the calls.

19.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

    *In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

20.    These requirements are separate but cumulative.  In other words, a company must comply with both the required information and comply with the national "do not call"

---

[1]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

database regulations. A failure to comply with either is a distinct violation of 47 U.S.C. § 227(c).

21.    Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones as well as residential telephones. 47 CFR § 64.1200(e).

22.    Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

23.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, including as described herein as to Defendant, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

24.    Individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892, 898 (W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.").

25.    A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018)*; Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D. Ohio Mar. 28, 2014); *Maryland v. Universal Elections,* 787 F. Supp. 2d  408, 416 (D.Md. 2011)(reasoning that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008).

26.     The regulations enforcing and interpreting the TCPA, also require that any person or entity that engages in telemarketing must transmit caller identification information.[2] 47 C.F.R. § 64.1601(e). This prevents a telemarketer from "spoofing" (using a false identification for their marketing calls) the telephone number from which the telemarketing call is made. Additionally, the regulations require telemarketers to -provide the name of the telemarketer when available by the telemarketer's carrier and the seller's customer service number.

27.     Here Defendant did not comply with the requirements of 47 C.F.R. **§ 64.1601(e)** as it provided incorrect information regarding the number from which the calls were being made**.**

## FACTUAL ALLEGATIONS

28.     Plaintiff was registered on the National Do Not Call List at all times relevant to this Complaint.

29.     Plaintiff registered his phone number to gain seclusion from unwanted solicitation phone calls.

30.     The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline

---

[2] The information required is: (1) the calling party number, "CPN" or automatic numbering information, "ANI"; and (2) the name of the telemarketer. 47 C.F.R. § 64.1601(e).

ORIGINAL COMPLAINT          9

phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with family and friends. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, playing music through his house speakers, timing food when cooking, and sending and receiving text messages. Plaintiff pays for the cell phone from his personal accounts and the phone is not primarily used for any business purpose.

31.     Plaintiff did not consent to any of the phone calls alleged herein.

32.     MCA hired and authorized their agents to make phone calls on its behalf to solicit the debt relief services of MCA.

33.     Plaintiff received the first phone call on July 9, 2024, that displayed 949-393-5517 on the caller identification. The phone was from Joseph Harden with MCA and resulted in Plaintiff telling Defendant that he was busy and could not talk.

34.     Plaintiff received the second phone call on July 11, 2024, that displayed 949-200-1680 on the caller identification. The phone call was from Joseph Harden with MCA and resulted in Plaintiff telling Defendant that he was busy and not interested and to stop calling.

35.     Plaintiff received the third phone call on July 15, 2024, that displayed 814-319-9992 on Plaintiff's caller identification. The phone call was from Joseph Harden with MCA and resulted in Plaintiff telling Defendant that he was not interested and to stop calling.

36.    Plaintiff received an email on July 15, 2024, from joseph.harden@mcadebtadvisors.com. Plaintiff responded to the email that he was not interested and to stop calling.

37.    Plaintiff received the second email on July 24, 2024, from anne.robinson@mcadebtadvisors.com. Plaintiff did not respond.

38.    Plaintiff received the fourth phone call on July 24, 2024, that displayed 814-479-8943 on Plaintiff's caller identification. The phone call was from Anne with MCA which resulted in Plaintiff telling Defendant that he would reach out if he was interested. Plaintiff then responded to Anne's previous email that he was not interested.

39.    Plaintiff received the fifth phone call on July 30, 2024, that displayed 814-479-8943 on Plaintiff's caller identification. Plaintiff did not answer the phone call.

40.    Plaintiff received the first text message on July 30, 2024, that displayed 814-479-8941 on the caller identification. The text message was an automated text from Tony with MCA. Plaintiff did not respond.

41.    Plaintiff received the third email on August 7, 2024, from peter.klaus@mcadebtadvisors.com. Plaintiff did not respond.

42.    Plaintiff received the sixth phone call on August 7, 2024, that displayed 949-326-9661 on the caller identification. The call was from Peter Klaus with MCA. Plaintiff told Defendant that he was not interested and to stop calling.

43.    Plaintiff received the second text message on August 7, 2024, that displayed 814-292-9365 on the caller identification. The text message was from Peter Klaus with MCA sharing his contact information. Plaintiff did not respond.

44.    Plaintiff received the third text message on August 7, 2024, that displayed 814-292-9365 on the caller identification. The text was from Peter Klaus with MCA informing Plaintiff that he had sent him an email and to check his spam for it.

45.    Plaintiff received the seventh phone call on August 14, 2024, that displayed 814-292-9365 on the caller identification. The call was from Peter Klaus with MCA. Plaintiff told him he could not talk.

46.    Plaintiff received the eighth phone call on August 14, 2024, that displayed 814-292-9365 on the caller identification. The text was from Peter Klaus with MCA explaining what MCA does for their clients. Plaintiff did not respond.

47.    Because the phone calls and text messages sent to Plaintiff were all placed by agents of MCA it has been determined that each of the calls and texts on July 9th, July 11th, July 15th, July 24th, July 30th, August 7th, and August 14th, are all on behalf of MCA Debt Advisors.

48.    Plaintiff did not have an existing business relationship with Defendant and never consented to receive phone calls from Defendant.

49.    Plaintiff did not consent to any of the calls alleged herein.

50.    Table A shows the calls sent to Plaintiff by Defendant.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| 1. | 07/09/2024 | 9:12AM | 949-393-5517 | Call from Joseph Harden w/MCA for business debt. Told him I could not talk. |
| 2. | 07/11/2024 | 11:38AM | 949-200-1680 | Call from Joseph Harden w/MCA. Told him I could not talk and not interested. |
| 3. | 07/15/2024 | 2:43PM | 814-319-9992 | Call from Joseph Harden w/MCA. Told him not interested and to stop calling. |
| 4. | 07/15/2024 | 2:51PM | EMAIL | Email from Joseph Harden w/MCA. Responded not interested. |
| 5. | 07/24/2024 | 5:42AM | EMAIL | Email from Anne Robinson w/MCA. Did not respond. |
| 6. | 07/24/2024 | 2:00PM | 814-479-8943 | Call from Anne Robinson w/MCA. Told her I'd reach out if I was interested. |
| 7. | 07/30/2024 | 3:00PM | 814-479-8941 | Call from Tony w/MCA. Did not answer. |
| 8. | 07/30/2024 | 3:02PM | 814-479-8941 | Text from Tony w/MCA. Did not respond |
| 9. | 08/07/2024 | 7:49AM | EMAIL | Email from Peter Klaus w/MCA. Did not respond. |
| 10. | 08/07/2024 | 8:19AM | 949-326-9661 | Call from Peter Klaus w/MCA. Told him not interested. |
| 11. | 08/07/2024 | 8:21AM | 814-292-9365 | Text from Peter Klaus w/MCA sharing his contact info. |
| 12. | 08/07/2024 | 8:22AM | 814-292-9365 | Text from Peter Klaus saying he had sent an email and to check the spam folder. |
| 13. | 08/14/2024 | 11:55AM | 814-292-9365 | Call from Peter Klaus w/MCA. Told him I could |

| | | | | not talk. |
|---|---|---|---|---|
| | | | | Text from Peter Klaus w/MCA explaining what they do for their clients. Did not respond. |
| **14.** | 08/14/2024 | 11:56AM | 814-292-9365 | |

51.    Each call was placed without the maintenance of an internal do-not-call policy. Every call was placed without training their agents/employees on the use of an internal do-not-call policy.

52.    No emergency necessitated calls or texts.

53.    Through information and belief, Defendant did not have a written do-not-call policy while sending Plaintiff unsolicited calls and texts.

54.    Defendant placed multiple unauthorized phone calls and text messages within a twelve-month period to Plaintiff's residential phone line, listed on the National Do Not Call List, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

55.    Every phone call and text message were a knowing and willful violation because the act was intentional.  A phone call and text message can only be purposefully placed and cannot be an accident or mistake.

MCA IS VICARIOUSLY LIABLE FOR THE PHONE CALLS

56.    MCA is "vicariously liable" under federal common law principles of agency for TCPA violations committed by hired telemarketers working for MCA.  *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

57.    It has been determined that the telemarketers of MCA use an Automatic Telephone Dialing System (ATDS) because there was no reason for Defendant to have Plaintiff's phone number. Plaintiff had never looked into MCA, nor had Plaintiff ever spoken to anyone with MCA prior to the phone calls.

58.    The telemarketers of MCA made the phone calls on behalf of MCA with the actual knowledge and authority of MCA.

59.    MCA markets debt relief services through direct telephone solicitation by its telemarketers who act on MCA's behalf. The telemarketers enroll potential clients for MCA and accepts those leads with full knowledge that the phone calls that contacted the customers violated the TCPA.

60.    MCA directs, controls, authorizes, and pays the telemarketers of MCA to generate leads for debt relief services through telephone solicitation.  Moreover, they require, authorize, or at least permit the telemarketers to solicit explicitly for debt relief representation.

61.    MCA sets the criteria for qualifying leads, which the telemarketers of MCA must follow.  Plaintiff is unaware of the qualifying thresholds, but the salient question is how much professional debt the potential client holds.

62.    On information and belief, MCA wrote or at least approved the call script the telemarketers of MCA use when qualifying leads for MCA.

63.    MCA maintained interim control over their telemarketers by controlling how and under what circumstances they would accept clients.

64.    MCA's telemarketers do nothing to disturb the impression that they work for and speak and act on behalf of MCA.

65.    MCA's telemarketers initial calls through Defendant MCA's acceptance of a completed representation application, the telemarketing of MCA's debt relief representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by MCA and acting as MCA's agent.

66.    The telemarketers of MCA, acting with actual and implied authority, made the prohibited calls, and qualified Plaintiff according to MCA's criteria

## INJURY TO PLAINTIFF

67.    Defendant's calls invaded Plaintiff's privacy and were a nuisance.

68.    Defendant's calls confused Plaintiff and caused Plaintiff to become aggravated.

69.    Defendant made multiple calls and sent numerous texts even after Plaintiff told them to stop calling.

70.    Plaintiff was angry, frustrated, and annoyed by Defendant's phone calls.

71.    Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

72.     Defendant's calls resulted in Plaintiff using his battery which resulted in more frequent charging of his cell phone, which reduced Plaintiff's enjoyment of his cell phone.

**COUNT ONE:**

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**

73.     Plaintiff realleges and re-adopts paragraphs 1 through 72 of the Complaint as if fully set forth herein.

74.     Defendant placed, or had placed on their behalf, eleven (11) telemarketing telephone calls and texts to Plaintiff's cellular telephone number without prior express written consent.

75.     Defendant has therefore violated 47 U.S.C. § 227(b).

76.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

77.     Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(b)(3).

///

///

///

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

78.    Plaintiff incorporates the preceding paragraphs 1 through 72 as if fully set forth herein.

79.    Defendant placed, or had placed on their behalf, telemarketing telephone calls to Plaintiff's residential telephone number.

80.    Plaintiff's telephone number was on the National Do-Not-Call Registry for more than 31 days at the time of calls.

81.    Plaintiff received two or more such calls in a 12-month period.

82.    Plaintiff is entitled to an award of $500 in statutory damages for each call pursuant to 47 U.S.C. § 227(c)(5) for each of eleven (11) solicitation phone calls.

83.    Plaintiff is entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5)


///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Steve Rosene prays for judgment against the Defendant as follows:

A.      An order declaring that Defendant's actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. §§ 227 (c), 47 C.F.R. §§64.1200(c)(4) and/or 47 C.F.R. § 64.1601(e);

B.      An order declaring that Defendant's actions, as set out above, violate the TCPA because they are a violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

C.      An award of statutory damages under the Telephone Consumer Protection Act;

D.      An award of treble damages for each and every violation, pursuant to *47 U.S.C.* § 227 (b)(3)(B) and 47 USC § 227(b)(3)(C);

E.      All other relief, in law and in equity, to which Plaintiff may be entitled, to which the Court deems just and proper.


///

///

///

///

///

**DEMAND FOR JURY TRIAL**

84.    Plaintiff hereby demands a trial by jury on all claims so triable.

                              LAW OFFICES OF KEVIN A. ROCKOFF.

October 9, 2024.              Respectfully Submitted,

                        /s/ Kevin A. Rockoff /s/

                        Kevin A. Rockoff

                        Law Offices of Kevin A. Rockoff

                        Attorney for Plaintiff